Filed 7/25/23  P. v. Aguirre CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096369 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F04114) |
| v. | |
| CARLOS RENE AGUIRRE, | |
| Defendant and Appellant. | |

Defendant Carlos Rene Aguirre was convicted of multiple charges related to a 2010 bank robbery.  In 2021, this court affirmed the convictions but remanded the matter back to the trial court for a resentencing hearing, so that the trial court could consider exercising its discretion to strike gun enhancements and a prior serious felony enhancement.  (*People v. Aguirre* (July 2, 2021, C085307) [nonpub. opn.] (*Aguirre*).)  Defendant argues the trial court erroneously denied his request to strike the prior serious felony enhancement.  We will affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2010, a man wearing a ski mask walked into a bank, grabbed Kelly C. from behind, put a gun to her head, and ordered everyone else to the ground. He demanded money from two bank tellers, and they put approximately $50,000 into his backpack. He then returned to the front of the bank and demanded Kelly C.'s car keys. She complied, and the man took off his mask and fled in her car. DNA recovered from the mask matched defendant's DNA. (*Aguirre, supra*, C085307.) There were three other bank employees present during the robbery.

In February 2017, a jury found defendant guilty of carjacking (Pen. Code, § 215, subd. (a); count one)[1] and six counts of second degree robbery (§ 211; counts two-seven). As to each count, the jury also found true that defendant personally used a firearm. (§ 12022.53, subd. (b).) The trial court found true that defendant had a prior serious felony conviction (§§ 667, subd. (a), 1192.7, subd. (c)) and a prior strike (§ 667, subds. (c) & (e)(1)), based on a 1997 conviction for assault with a firearm (§ 245, subd. (a)(2)). (*Aguirre, supra*, C085307.) Defendant was 15 years old when he committed the strike offense.

In June 2017, the trial court sentenced defendant to an aggregate prison term of 30 years four months, which included doubling a term for the prior strike, adding a five-year term for the prior serious felony enhancement, and terms for the firearm enhancements. (*Aguirre, supra*, C085307.) In July 2021, we affirmed the convictions but remanded the matter for the trial court to consider exercising its discretion to strike the firearm enhancements and the prior serious felony enhancement. We also permitted defendant to renew his motion to strike the prior conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. (*Aguirre, supra*, C085307.)

---

[1] Undesignated statutory references are to the Penal Code.

During the March 2022 resentencing hearing, the trial court granted defendant's *Romero* motion and struck the strike. In so doing, the court noted that, if defendant's 1997 juvenile case were brought today, it would be very unlikely that his adjudication would have resulted in a strike, given the limitations that were added in section 667, subdivision (d)(3)(A). In addition, defendant appeared to be making positive changes in his life. Although he had additional subsequent criminal convictions, including a conviction in 2010 for driving under the influence, the court noted defendant had remained crime and incident free while in custody for the 2017 crimes, and he had pursued education and other prison programs. He also was an attentive father. Finally, the court noted that defendant had a difficult childhood.

However, the trial court declined to exercise its discretion to strike the firearm enhancements. In so doing, the court noted it had given "great weight" to the mitigating factors as outlined in section 1385, subdivision (c)(2)(A)-(I) but concluded the factors were not outweighed by the danger defendant posed to others. The court considered defendant's background, the nature of his present offenses, and the interests of society. The court noted defendant suffered stress, alcohol abuse, and physical ailments at the time of the robbery and carjacking. But, the current crimes involved great violence and the threat of great bodily injury or death, indicating a "high degree of callousness by the defendant." The crimes also involved advance planning, and defendant's phone records indicated he had been in the vicinity of the bank the day before the robberies, suggesting he was not acting on a whim. Defendant also acted with a significant level of sophistication, including concealing his identity with a ski mask and wearing gloves to avoid leaving fingerprints. Defendant showed he intended to use the gun if the bank tellers did not comply with his demands, and he further asserted his authority by jumping up on the counter of the bank tellers' stations. In addition, defendant had fired multiple shots while committing the 1997 assault, and he continued to possess a gun despite being prohibited from doing so due to his prior criminal convictions. In sum, the court declined

3

to strike or dismiss the firearm enhancements because it was not in the furtherance of justice to do so.

The trial court also declined to strike the prior serious felony enhancement. The court again noted defendant had used a gun in the 1997 assault conviction, armed himself again despite being prohibited from doing so due to his prior convictions, and had committed serious current crimes. In addition, defendant had perjured himself during trial and denied any culpability for the charged offenses.

The trial court then sentenced defendant to an aggregate prison term of 22 years four months, as follows: The low term of three years for count one plus 10 years consecutive for the firearm enhancement, three years for count two plus 10 years for the firearm enhancement that the court stayed pursuant to section 654, one year consecutive for count three plus three years four months for the firearm enhancement, three years concurrent for each of counts four through seven plus 10 years concurrent for each of the associated firearm enhancements, and five years consecutive for the prior serious felony enhancement.

Defendant subsequently filed a motion for reconsideration asking the trial court to dismiss or strike the prior serious felony enhancement because it resulted in a sentence greater than 20 years, which defendant argued was contrary to section 1385, subdivision (c)(2)(C). He further argued he was not a danger to public safety, especially since his prior serious convictions were from 12 and 26 years ago. He also had exhibited good behavior in prison and was not a gang member. Defendant filed two briefs on the issue, and also asked the court to correct his presentence custody credits.[2]

At the start of the May 2022 hearing, the trial court said it had read defendant's briefs and would consider defendant's request to strike the "firearm enhancement" and

---

[2] The court's ultimate award of presentence custody credits is not at issue in this appeal.

correct his credits. Noting there was not yet guidance from appellate courts regarding how to define "endanger public safety" under section 1385, subdivision (c)(2) (which explains the phrase as meaning "there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others"), the court cited *In re Lawrence* (2008) 44 Cal.4th 1181, and explained it would consider "whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense." In addition, the court would consider whether the community would be endangered when defendant got out of prison. The court noted multiple mitigating facts, including defendant's change in "attitude" and "dynamic." The court then stated it stood by its analysis in March 2022, including its statements on the record as to why it decided against dismissing the gun enhancements because doing so would endanger public safety. The court noted it had "fully" considered defendant's ongoing participation in "prison-based rehabilitation programs, his testimonial letters, his current reflective attitude, and the content of a prison psychologist's assessment of his ongoing progress as mitigating factors in the analysis." The court later commented that it hoped defendant's good behavior was a "function of a revised standard of conduct. But it's also been fashioned under the threat of force and punishment of state prison authorities." Still, the court noted there were multiple factors in aggravation, including all the factors it discussed with respect to the firearm enhancements. In addition, defendant refused to settle the case, lied under oath, and had previously used firearms. Under the circumstances, the court refused to strike the firearm enhancements because defendant was a danger to public safety upon his release from custody. Defendant timely appealed, filing his opening brief in December 2022. The case became fully briefed in April 2023, and was assigned to this panel shortly thereafter.

5

DISCUSSION

Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), which went into effect in January 2022, amended section 1385 to guide the exercise of the court's discretion in deciding whether to dismiss enhancements. Subdivision (c)(2) of section 1385 lists a series of circumstances for the court to consider, including whether: (1) multiple enhancements were alleged in a single case; (2) the application of an enhancement could result in a sentence of over 20 years; (3) the current offense is connected to childhood trauma; (4) the defendant was a juvenile when they committed the offense that triggers the enhancement; and (5) the enhancement is based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(B), (C), (E), (G), & (H).) The statute further provides that "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

Defendant contends the trial court abused its discretion when it declined to strike or dismiss the punishment for the prior serious felony enhancement during the May 2022 hearing. Defendant notes that there were multiple circumstances present indicating the court should have struck the prior serious felony enhancement: (1) there were multiple enhancements alleged in his case (§ 1385, subd. (c)(2)(B)); (2) the application of the prior serious felony enhancement resulted in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); (3) he presented evidence of childhood trauma and neglect that the court found credible (§ 1385, subd. (c)(2)(E)); (4) he was only 15 years old when he committed the assault that was the basis for the prior serious felony enhancement (§ 1385, subd. (c)(2)(G)); and (5) the assault conviction was from 1997, making it more than five years old (§ 1385, subd. (c)(2)(H)).

Noting that the trial court only mentioned the firearm enhancements during the May 2022 hearing, defendant further argues the trial court erred by failing to engage in a

6

separate analysis as to whether striking the prior serious felony enhancement would have endangered public safety. Noting that the prior serious felony enhancement only involved a five-year term, as opposed to the term of 13 years four months imposed on the firearm enhancements, defendant argues it is probable that the trial court would have found that reducing a sentence by five years would be in the furtherance of justice. In addition, notes defendant, the firearm enhancements were based on defendant's conduct while committing the underlying offenses in this case. However, the prior serious felony enhancement is based on defendant's prior conduct and is not directly related to defendant's actions in the current crimes. Finally, defendant argues, the court failed to properly consider his good behavior while incarcerated.

Assuming without deciding that defendant is entitled to appellate review of the court's May 2022 ruling on his motion for reconsideration, we find defendant's contentions without merit. In giving its detailed explanation in March 2022 as to why it was declining to strike the enhancements, the trial court initially noted that it had given "great weight" to the five mitigating circumstances outlined in section 1385 that were present here: (1) multiple enhancements were alleged (§ 1385, subd. (c)(2)(B)); (2) applying the enhancements resulted in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); (3) there was evidence of childhood trauma and neglect (§ 1385, subd. (c)(2)(E)); (4) defendant was only 15 years old when he committed the assault that was the basis for the prior serious felony enhancement (§ 1385, subd. (c)(2)(G)); and (5) the assault conviction was from 1997, making it more than five years old (§ 1385, subd. (c)(2)(H)). In specifically mentioning that defendant was a juvenile when he committed the assault and that the assault conviction was more than five years old, the trial court made clear it was considering the section 1385 mitigating circumstances with respect to the firearm *and* prior serious felony enhancements.

The trial court reasoned that, nonetheless, these circumstances were outweighed by the danger that defendant posed to others and to the community, meaning it was not in

the furtherance of justice to strike or dismiss the enhancements.  The court cited multiple reasons why it considered defendant to be a danger to the community, including that defendant had:  (1) used a gun in both the 1997 and 2010 crimes; (2) armed himself again for the current crimes despite being prohibited from doing so due to his prior convictions; (3) committed serious current crimes that involved great violence, threat of great bodily injury, sophistication, and planning; and (4) perjured himself during trial and denied any culpability for the charged offenses.  The court specifically went through this analysis for both the firearm and the prior serious felony enhancements.

It is reasonable to infer that, during the May 2022 hearing, the trial court had in mind its very detailed and specific analysis as to *all* the enhancements from March 2022, especially since the court stated it stood by that analysis.  Moreover, the court never indicated that it had changed its central analysis regarding the danger that defendant posed to public safety.  As it did in March 2022, the court in May 2022 stressed again that it continued to be concerned that defendant had lied under oath and had previously used firearms.  In addition, the court clearly stated that it had "fully" considered defendant's good behavior in prison and his participation in prison programs.  As such, although it may have only expressly referenced the firearm enhancements during the May 2022 hearing, the court gave no indication that it was inclined to change its mind and dismiss or strike the prior serious felony enhancement.  Given the general rule that we presume that the trial court was aware of and understood the scope of its authority and discretion under the applicable law (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114), we find no error.

DISPOSITION

The judgment is affirmed.

/s/
BOULWARE EURIE, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
HORST, J.*

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9